The State v. Lewis.

*2. ——:objec-
tions:grounds
of.*

THE STATE v. LEWIS.

1. **Criminal Law :** EVIDENCE: INTENT.    The guilty intent of a party
   may be shown by his acts, conduct and declarations after, as well as
   before and at the time of, the commission of the criminal act.

2. ——: ——: ADMISSIONS.    When the admissions of the defendant
   are supported by circumstances, a fact which constitutes but one
   ingredient of the crime may be established thereby.

*Appeal from Pottawattamie District Court.*

THURSDAY, DECEMBER 7.

THE defendant was indicted, tried and convicted for obtain-
ing money under false pretenses, and he appeals.

*John H. Keatly*, for appellant.

*M. E. Cutts, Attorney General*, for the State.

ROTHROCK, J.—I. The alleged crime consisted in the defendant falsely and fraudulently representing and pretending to one N. J. Bond that he had purchased certain hogs, and thereby inducing said Bond to pay him $80 in money. N. J. Bond was the only witness examined on the trial. It is not necessary to set out his testimony here. It is sufficient to say that it appears therefrom that he paid the defendant $80, and gave him a letter of credit upon which defendant obtained $50. This money was to pay for certain hogs which the defendant represented he had purchased, and the hogs were to be shipped from Missouri Valley, and the profits were to be divided between witness and defendant. Upon receiving the money defendant went to Missouri Valley, but shipped no hogs, and did not return or account for the money. Soon after going to Missouri Valley witness received certain telegrams purporting to be sent by defendant, and one purporting to be sent by one Brooks, in which telegrams defendant advised witness that he would ship a car load that night, and made other statements in regard to the enterprise. After the defendant was arrested, in a conversation with witness, he admitted that all the representations made were false; that he sent all said telegrams, and that the Brooks message was sent to mislead the witness. The telegrams were read in evidence against defendant's objection, and he assigns this as error.

We think these telegrams were properly admitted. They tended to show the intention of the defendant in procuring the 1. CRIMINAL money from Bond. It is said they were not sent law evidence: intent. until after Bond parted with his money, and not until after the crime was committed. The guilty intent of a party may be shown by his acts, conduct and declarations before, at the time of, or after the commission of a criminal act.

It is urged that the telegrams were not sufficiently identified to allow them to be read in evidence. We think they were.

Bond testifies that at the ·time the defendant admitted that he sent the dispatches he called defendant's attention to the contents of each dispatch.

II.   The court gave to the jury the following instruction: " And the representations relied on by Bond must be shown to have been false when made, or a conviction cannot be had, *but their falsity may be shown by the admissions of defendant, if such admissions were voluntarily made.*"

2. ——: ——: admissions.

It is insisted that this instruction is erroneous, because a confession would not warrant a conviction unless accompanied by other proof that the offense had been committed.   Code, Sec. 4427.   And it is said that there was no evidence tending to show the falsity of the representations, aside from the confession.   It must be conceded that every other ingredient of the crime was established by other evidence.   The fact that the representations were made, that Bond was induced thereby to part with his money, and that the defendant intended to defraud him, are fully established without the confession of defendant; and the fact that defendant did not produce the hogs, nor account for the money, nor report himself, tended very strongly to show that the representations that he had purchased hogs were false.   Under these circumstances, together with the fact that the falsity of the representations were but one ingredient in the crime, we think there was no error in the instruction in question.

III.   In support of his motion for a new trial, the defendant introduced affidavits setting forth certain newly discovered evidence.   Without determining the materiality of such evidence, it is sufficient to say that the evidence itself was not newly discovered, but consisted of personal transactions between the defendant and the witnesses, of which he was fully advised before the trial.   He claims that he did not know the names of the witnesses.   Due diligence would require that he should have ascertained the names before the trial, or, failing in this, made an application for continuance.

AFFIRMED.