STATE OF IOWA, Appellee, v. DALE STEWART, Appellant.

No. 45605.

JANUARY 13, 1942.

Charles H. Lynch, for appellant.

John M. Rankin, Attorney General, Jens Grothe, Assistant Attorney General, and Francis J. Kuble, County Attorney, for appellee.

HALE, J.—The defendant in this case, Dale Stewart, is claimed by the State to have violated section 12964 of the 1939 Code, on June 16, 1940, by placing dynamite in the gas heater attached to the furnace in the home of Harvey Wolfkill and his wife, Irene Wolfkill, with intent to injure or destroy such dwelling. Defendant entered plea of not guilty and was convicted and sentenced, and he appeals.

Section 12964 of the Code of 1939 provides punishment for any person who, with intent to destroy or injure any inhabited dwelling house, deposits or throws therein or thereunder, or elsewhere about the same, where its explosion will or is likely to destroy or injure the same, any dynamite, nitroglycerin, or giant powder, or other explosive material.

The defendant, who was divorced, roomed at the home of Mr. and Mrs. Wolfkill, in Des Moines. He had known Mrs. Wolfkill five or six years and her husband about a year. On the evening of Sunday, June 16, 1940, Wolfkill went to the basement of his house, lighted the gas in the hot water heater, came upstairs, and, about five minutes after lighting the heater, was seated with his wife on the front porch, when the heater exploded, destroying the heater and doing considerable damage to windows, pipes, and the furnace, and some injury to the floor above. The defendant at this time had gone on an errand to a near-by store. The heater, about twenty inches high, is described as two enclosed sets of copper coils, one inside the other, with little space between the two sets, and with the burner lower than the coils. The whole heater is approximately seven or eight inches in diameter. The dynamite stick alleged to have been placed in the heater was about eight inches long, and was stated by one witness to be three-eighths of an inch in diameter, by another about one and one-quarter inches, with an explosive cap in the middle of the stick, and to be placed in the coils might have to be bent. There was evidence that the defendant pro-

cured from one Greenland three or four sticks of the explosive, but defendant, while admitting getting dynamite from him, denied getting more than two sticks. There is testimony of Lowe, who states that after defendant's arrest and at his request the witness cleaned out defendant's locker at the place he worked —the Fitch Company factory—and found with the clothing therein a stick of dynamite and a cap and fuse. The defendant admitted in evidence that this was his dynamite in the locker. There is nothing in the record showing that he used explosives in his work or for any purpose. The evidence indicates otherwise.

There was other testimony, some relative to the explosive character of dynamite under various conditions.

On Saturday, July 20, 1941, the defendant stated to Hardenbrook and Antrim, two police officers, in a room in the jail, near to the door of which a deputy sheriff stood, that he, the defendant, had put the dynamite in the heater of the Wolfkill home and that he crumbled it up or bent it around the coils of the heater. He signed a written statement, or confession, in the presence of the two officers and of Mrs. Snyder, secretary to the detective bureau, who all signed as witnesses. In such confession, he stated his name, age 32, and present residence at the county jail; that he made the statement of his own free will and accord, without threats or promises from the officers, and knowing that it might be used against him, and with knowledge of his constitutional rights and that he did not have to make the statement unless he wanted to. He then stated as to his residence on June 16th; that he was returning to the Wolfkill home; that a week or two prior thereto he had obtained the dynamite and caps from Greenland; that he put one stick in his locker at Fitch's and one in the heater; that he bent the latter and pushed it up in the middle of the coils, with a cap in the middle of the stick; that this was unknown to anyone but himself, and he did not light the heater thereafter; he had lighted it only a couple of times, Harvey lighted it most of the time, and Mrs. Wolfkill never did light it. In response to a question as to his intention of hurting Wolfkill he stated that some time Wolfkill would light the heater, but he did not know just when

he would. The explosive, he stated, in the coil was a couple of inches from the flame. He stated also that he liked Mrs. Wolfkill pretty well; that he had seen dynamite shot, but would not say that he knew much about it.

The principal controversy in the case—this confession—was submitted to the jury, and under instruction No. 6 the jury were fully informed as to the conditions under which it might or might not be considered, the necessity of other corroboration, all in accordance with the procedure recently approved by us in State v. Plude, 230 Iowa 1, 6, 296 N. W. 732, 735. See that case and cases cited. The defendant argues that the court erred in overruling both motions for directed verdict and to withdraw the confession. The jury has determined that the confession was voluntary, and it is admissible if there is sufficient corroboration, under section 13903, Code of 1939. Defendant cites various authorities. In State v. Thomsen, 204 Iowa 1160, 1161, 216 N. W. 616, 617—a liquor case—there was no proof whatever of possession or sale, and the court stated that the meaning of the law was "that, regardless of the source from which it comes, and regardless of the contents of the confession, if there is not some other testimony, aside from the confession itself made outside of open court, a conviction cannot stand." This is as far as this authority goes. In State v. Abrams, 131 Iowa 479, 108 N. W. 1041, carrying concealed weapons, the evidence was insufficient to establish the corpus delicti; and the case distinguishes between admissions and confessions. State v. Westcott, 130 Iowa 1, 7, 8, 104 N. W. 341, 343, is also cited by defendant. In that case—a conviction for manslaughter—the same objections were made as in this case, under section 5491, Code of 1897 (now section 13903, Code of 1939), "that a conviction cannot be had upon an extrajudicial confession, unless it be accompanied with other proof (or evidence) that a crime has in fact been committed by some one."

In affirming the conviction the court says:

"The statute says the confession must be 'accompanied with other proof' that the offense was committed, and we think it does no more than announce the general rule prevailing in this country that a confession must be corroborated by other testimony. This corroborating testimony need not of itself, and

independent of the confession, be such as to prove the commission of a crime beyond all reasonable doubt. It is sufficient, in our opinion, if, when considered with the confession, it establishes beyond all reasonable doubt that a crime was in fact committed by some one. [Citing cases.] * * * corpus delicti * * * may be established by circumstantial as well as by direct evidence.''

See also, as to corroboration, the general rule laid down in 22 C. J. S. 1474, which is in accord with the rule as stated in State v. Westcott, supra. We do not think the general rule, or the rule laid down in the Westcott case, is at variance with the decision in State v. Cook, 188 Iowa 655, 176 N. W. 674, in which there was a complete lack of corpus delicti or showing of intent, and the statements made did not amount to a confession.

■ Other cases are cited, including State v. Turner, 19 Iowa 144; State v. Lewis, 45 Iowa 20; State v. Feltes, 51 Iowa 495, 1 N. W. 755; and State v. Dubois, 54 Iowa 363, 6 N. W. 578, none of which sustains the argument of defendant as to the question of corpus delicti, and admissibility of the confession. The Westcott case, supra, has been cited and approved by the court, as in State v. Henricksen, 214 Iowa 1077, 243 N. W. 521, holding that circumstantial evidence will be sufficient to establish the corpus delicti; citing State v. Manly, 211 Iowa 1043, 233 N. W. 110; State v. Solomon, 203 Iowa 954, 210 N. W. 448. See also, State v. Kelley, 193 Iowa 62, 66, 186 N. W. 834, 836, and cases cited therein.

What we have said heretofore refers to defendant's division 1, in which is included the question of admissibility of the confession and the sufficiency of the evidence. The argument on either is connected with what may be said as to the other, and defendant's division 2 of his argument, referring to the court's refusal to withdraw the confession, is also so connected as not to require repetition. Defendant, however, argues that the physical facts controvert the oral testimony, especially in relation to the placing of the dynamite in the heater. We do not so view the testimony.

Other testimony was introduced as to different portions of the case on trial, but we need not give it further mention here

since the foregoing questions constitute the main questions in the case. The testimony of the defendant as to the procuring of the confession, urging that it was not voluntary, is contradicted by other evidence; and the whole case was, we think, properly submitted to the jury, including evidence in relation to the character of the explosive, and the method of placing it in the heater, where the testimony shows that it was so placed. All these were proper subjects for the consideration of the jury.

On examination of the whole record we find that there was evidence to sustain the verdict, that the court was correct in its ruling, and the verdict and judgment are affirmed.—Affirmed.

CHIEF JUSTICE and all JUSTICES concur.